

BC

FILED
4/30/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

GMC

| | | |
|---|---|---|
| ROMIT CHAKRABORTY, Ph.D. | ) ) ) | **United States District Court** **Northern District of Illinois** |
| | ) | |
| | ) | **Chakraborty v. Gagliardi** |
| Plaintiff, | ) | Case No. 1:26-cv-00106 |
| | ) | Judge Hon. Jorge L. Alonso |
| v. | ) | Magistrate Hon. Judge Albert Berry III |
| | ) | |
| LAURA GAGLIARDI | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT DR. LAURA GAGLIARDI'S RULE 12(b)(6) MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**INTRODUCTION**

Plaintiff Romit Chakraborty is a computational quantum chemist, a niche field that is considered a subfield of theoretical chemistry. Plaintiff alleges that Defendant Laura Gagliardi fraudulently induced him to accept employment and published false statements regarding his professional credentials both during and after his 11-month tenure to sabotage his academic references, materially impair his prospective academic appointments, and create a foreseeable risk of reputational harm within his industry relationships. Plaintiff contends that this conduct constitutes fraudulent inducement, defamation *per se*, tortious interference with prospective economic advantage, and intentional infliction of emotional distress. Defendant now moves to dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendant's motion to dismiss should be denied.

**BACKGROUND**

Plaintiff Romit Chakraborty is a computational quantum chemist. Having completed his graduate and doctoral training in the United States, Plaintiff has spent over a decade establishing a deeply rooted, specialized professional network within the American quantum chemistry sector. On August 31, 2023, Defendant Laura Gagliardi recruited Plaintiff to a staff position as a 'Quantum-AI Researcher.' (FAC ¶ 16; Ex. 1). Plaintiff held this role from November 27, 2023, to October 25, 2024. On October 28, 2024, Plaintiff commenced employment as a Senior Quantum Solutions Computational Chemist at PsiQuantum, Corp.

Defendant maintains professional connections within the PsiQuantum ecosystem, explicitly including the placement of students and collaborators into roles within that same organization. (FAC ¶ 7). On December 10, 2024, Plaintiff was abruptly terminated from PsiQuantum. (Ex. 7). Defendant's Motion relies heavily on Professor Head-Gordon's subjective email to repeatedly characterize this as a "cause-based termination" to break the chain of causation. This argument improperly asks the Court to resolve a disputed factual narrative at the pleading stage. The First Amended Complaint explicitly pleads that Plaintiff did not accept this characterization and subsequently "resolved an employment dispute with PsiQuantum." (FAC ¶ 9). By attempting to weaponize a subsequently resolved corporate dispute as definitive proof of 'cause,' Defendant ignores the well-pleaded facts of the FAC and asks this Court to draw improper factual inferences in her favor.

Following the abrupt December 2024 termination from PsiQuantum (Ex. 7), Plaintiff was actively engaged in securing new academic appointments to maintain his livelihood and legal

standing as a foreign national. (FAC ¶ 10; FAC ¶ 32; Ex. 8). It was precisely during this critical transitional window that Defendant published false statements to University Human Resources (FAC ¶ 22; Ex. 3) and communicated disparaging remarks to Plaintiff's primary academic referee. (FAC ¶ 28; Ex. 7). For a foreign national researcher fundamentally reliant on pristine academic references (FAC ¶ 26), the calculated sabotage of these vital relationships not only destroyed Plaintiff's professional standing, but directly impaired his ability to secure the pending opportunities at the University of New Mexico and Oxford. (FAC ¶ 34; Ex. 8). This conduct resulted in severe, quantifiable damages, explicitly including lost income, relocation costs, and forfeited equity valuation. (FAC ¶ 43; Ex. 8).

Following Plaintiff's departure from the university, Defendant wrote to University Human Resources on January 3, 2025, asserting that Plaintiff's staff title was 'totally made up by you.' (FAC ¶ 22; Ex. 3). However, Defendant's disparagement of Plaintiff was not limited to this interaction. As pleaded, Defendant also initiated communications with Professor Martin Head-Gordon—Plaintiff's primary academic referee—regarding her dissatisfaction with Plaintiff's performance. (FAC ¶ 28). These communications directly resulted in Professor Head-Gordon's documented conclusion that Plaintiff made a poor impression because he was 'distracted by LLMs' and had performed poorly. (FAC ¶ 5; Ex. 7).

This characterization of Plaintiff as 'distracted' was objectively false. As pleaded, Defendant specifically recruited Plaintiff to execute the exact LLM-based computational research detailed in their joint Azure Accelerate Foundation Models Research proposal. (FAC ¶ 4; Ex. 4). Nevertheless, following Defendant's communications, Professor Head-Gordon explicitly withdrew his prior support, stating his doubts regarding Plaintiff's honesty and suitability for academia or industry. (FAC ¶ 29; Ex. 7). For a foreign national whose professional advancement

relies fundamentally on pristine academic references (FAC ¶ 10; FAC ¶ 26), the calculated sabotage of this primary referee materially impaired Plaintiff's ability to secure the pending academic positions at the University of New Mexico and the University of Oxford. (FAC ¶ 32; FAC ¶ 34; Ex. 8).

Defendant now moves to dismiss the First Amended Complaint (FAC) under Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the case. McReynolds v. Merrill Lynch & Co., 694 F.3d 873, 878 (7th Cir. 2012). The Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim is facially plausible when the plaintiff pleads factual content that allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. Id. Where an exhibit contradicts a defendant's arguments on a motion to dismiss, the exhibit controls. Centers v. Centennial Mortg., Inc., 398 F.3d 930, 933 (7th Cir. 2005).

## DISCUSSION

## I. FRAUDULENT INDUCEMENT (PROMISSORY FRAUD)

To state a claim for fraudulent inducement under Illinois law, a plaintiff must allege: (1) a false statement of material fact; (2) knowledge of falsity; (3) intent to induce the plaintiff to act; (4) justifiable reliance; and (5) damages. Abazari v. Rosalind Franklin University, 2015 IL App (2d) 140952. While promises of future conduct are generally not actionable, they become actionable

as promissory fraud when the defendant made the promise with the contemporaneous intent not to perform it. Bower v. Jones, 978 F.2d 1004, 1011 (7th Cir. 1992).

Defendant argues that because Plaintiff was issued a staff ID and the alleged misclassifications occurred post-departure, no fraud occurred at the time of hiring. This misconstrues the FAC and ignores the documented institutional reality of Plaintiff's hire. As established in the pleadings, the University's Office of the Provost explicitly prevented Defendant from hiring Plaintiff as a postdoctoral researcher in July 2023. (Ex. 5). To circumvent this institutional mandate, Defendant executed the staff offer letter (FAC ¶ 16; Ex. 1) to secure Plaintiff's labor under a cap-exempt visa, while harboring the contemporaneous intent to illegally subordinate him as the exact postdoctoral researcher the Provost had forbidden.

This intent to defraud materialized immediately. From the inception of his tenure, Defendant maintained Plaintiff's public listing under 'Postdoctoral Researchers' (FAC ¶ 19) and fostered an environment where her research group classified and enforced protocols against him as a postdoc. (FAC ¶ 20; Ex. 6). Defendant's contemporaneous intent to deceive is further corroborated by her subsequent written admission that she knowingly placed him on the website as a postdoc despite his staff hire. (FAC ¶ 22; Ex. 3). Taking these exhibits as true, Plaintiff has plausibly alleged a scheme of promissory fraud designed to induce a foreign national into accepting employment under false pretenses.

Specifically, Exhibit 6 contains contemporaneous written communications from Bhavnesh Jangid, a graduate student within Defendant's research group, explicitly relying on Plaintiff's false classification as a 'postdoc' to justify the premature revocation of Plaintiff's institutional data and email access. When Plaintiff protested in writing on December 23, 2024, that he had

been suddenly locked out on December 16, 2024, despite Defendant explicitly extending his access to December 24, 2024, the group member casually invoked the 'postdoc' protocol to explain the revocation, warning that IT services would close by noon the next day for the holiday. (Ex. 6). Because exhibits attached to the complaint control the factual narrative under Federal Rule of Civil Procedure 10(c), these messages must be taken as true. They plausibly demonstrate that Defendant systematically instructed her research group to treat Plaintiff as a subordinate trainee, actively executing the exact scheme of misclassification alleged in the First Amended Complaint.

Taking the allegations as true, Plaintiff has plausibly alleged a scheme of promissory fraud designed to induce a foreign national into accepting employment under false pretenses. Far from a harmless 'misnomer' as Defendant claims, the documentary record establishes the material devastation of this fraud, forcing Plaintiff to urgently appeal to the Provost to correct his record due to 'significant career and immigration considerations.' (Ex. 5).

## II. DEFAMATION PER SE

To state a claim for defamation per se, a plaintiff must allege: (1) a false statement; (2) unprivileged publication to a third party; (3) that the statement imputes a lack of integrity or ability in the plaintiff's profession; and (4) damages.

Regarding the January 3 email to Human Resources, Defendant argues her statement that Plaintiff's title was 'totally made up by you' is protected by a qualified privilege. However, qualified privilege is defeated by actual malice, which exists when a defendant knows the statement is false. Kuwik v. Starmark Star Mktg. & Admin., Inc., 156 Ill. 2d 16, 24 (1993). The documentary record establishes that Defendant was barred by the Provost from hiring Plaintiff as

a postdoc (Ex. 5) and subsequently signed the contract granting him the title of 'Quantum-AI Researcher.' (FAC ¶ 16; Ex. 1). Therefore, her subsequent statement to HR asserting that Plaintiff fabricated his own title was made with objective, documented knowledge of its falsity.

Regarding the communications to Professor Head-Gordon, Defendant argues her statements that Plaintiff was "distracted by LLMs" are non-actionable opinions. Under Illinois law, a statement is not an opinion if it is capable of objective verification. Doherty v. Kahn, 289 Ill. App. 3d 544, 557 (1st Dist. 1987). Exhibit 4, the Azure Accelerate Foundation Models Research proposal, proves that Defendant explicitly recruited and funded Plaintiff to research the application of large language models to active space selection. Accusing a computational chemist of being "distracted" by the exact computational methodology he was mandated to execute is a verifiable falsehood regarding his professional duties, not a subjective evaluation.

## III. TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

To state a claim for tortious interference, a plaintiff must allege: (1) a reasonable expectancy of a future business relationship; (2) the defendant's knowledge of that expectancy; (3) intentional interference; and (4) resulting damages. Dowd & Dowd, Ltd. v. Gleason, 181 Ill. 2d 460, 484 (1998).

Defendant argues Plaintiff possessed only a "vague hope" of employment and that Plaintiff's termination from PsiQuantum breaks the chain of causation. Both arguments fail at the pleading stage. First, the FAC and Exhibit 8 specifically identify active expectancies: the University of New Mexico faculty search and the Oxford EPSRC funding pathway. Second, Defendant knew Plaintiff, as a foreign national, fundamentally relied on pristine academic references to maintain his employment and legal standing within the United States. (FAC ¶ 10; FAC ¶ 26). Third,

Exhibit 7 explicitly links Defendant's interference to the loss of the expectancy; Professor Head-Gordon specifically cited Defendant's "strong dissatisfaction" as a basis for doubting Plaintiff's honesty and suitability for academia. Whether the PsiQuantum termination independently caused the loss of the academic positions is a disputed question of fact inappropriate for resolution under Rule 12(b)(6).

## IV. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

To state a claim for intentional infliction of emotional distress (IIED), a plaintiff must allege: (1) extreme and outrageous conduct; (2) intent or reckless disregard; and (3) severe emotional distress. The extreme and outrageous character of conduct frequently arises from an abuse of a position of power or authority. McGrath v. Fahey, 126 Ill. 2d 78, 86-87 (1988).

The severe distress and high stakes of this abuse of power are meticulously documented in the pleadings. Defendant did not merely misclassify Plaintiff; she leveraged that fraudulent 'postdoc' classification to prematurely sever his access to his irreplaceable scientific data and primary research materials on December 16, 2024, despite explicitly promising access until December 24, 2024. (Ex. 6). When Plaintiff desperately sought to recover his data on December 23, 2024, he was casually met with the 'postdoc' protocol and warned that University IT was shutting down the following day. (Ex. 6). Plaintiff was forced to plead to the Office of the Provost that correcting his fraudulently suppressed title and securing his publication rights was 'urgent because I am navigating significant career and immigration considerations.' (Ex. 5). Weaponizing a fraudulent title to summarily lock a foreign national researcher out of his irreplaceable scientific data on the eve of a university holiday closure, thereby threatening his

professional standing and immigration viability, constitutes a severe abuse of authority that easily clears the pleading threshold for extreme and outrageous conduct.

**CONCLUSION**

For the reasons stated above, Plaintiff has plausibly alleged every element of the four causes of action. Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety.

Dated: April 30, 2026

Respectfully submitted,

/s/ Romit Chakraborty, Ph.D. (pro se)

Romit Chakraborty, Ph.D.

20990 Valley Green Drive, Apt 692

Cupertino, CA 95014

Tel: (773)-816-8338

Email: romit.chakraborty@gmail.com