**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ROMIT CHAKRABORTY, | ) | |
| | ) | Case No. 26-cv-00106 |
| Plaintiff, | ) | |
| | ) | Judge: Hon. Jorge L. Alonso |
| v. | ) | |
| | ) | Magistrate Judge: Hon. Albert Berry, III |
| LAURA GAGLIARDI, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT DR. LAURA GAGLIARDI'S REPLY**
**IN SUPPORT OF HER RULE 12(b)(6) MOTION TO DISMISS**

Defendant Dr. Laura Gagliardi submits this reply in support of her Motion to Dismiss, pursuant to Rule 12(b)(6).

In short, in his response Plaintiff has failed to identify any reason why his claims should not be dismissed with prejudice. Plaintiff has still not identified a statement of material fact that induced him to come work for Defendant. He has failed to plead sufficient facts to overcome the qualified privilege that attaches to the single interoffice communication to human resources, and the other alleged statements to Defendant's colleague were non-actionable opinions that do not qualify as defamation *per se*. Plaintiff has failed to plead anything more than vague hopes of job offers which do not qualify as elements of interference with prospective economic advantage. Neither the job title that was corrected within a week nor the alleged statements were sufficiently extreme or outrageous to support a claim for intentional infliction of emotional distress. Plaintiff's claims should be dismissed with prejudice.

**Fraudulent Inducement**

In his response, Plaintiff misconstrues the extraordinary effort that Dr. Gagliardi made to accommodate Plaintiff as an unconventional employee as a conspiracy to "illegally subordinate

Plaintiff's labor" and ignores the documents attached to his own Amended Complaint which contradict those documents. Plaintiff characterizes his own unusual post-graduate trajectory and the inability to fit into a traditional appointment category at the University as Defendant's intent to defraud. Plaintiff fails to identify anything more than conspiracy theories that are contradicted by simple facts and documents attached to his Amended Complaint.

Rather than pointing to an allegation of a statement of material fact that induced him to come work for Defendant, Plaintiff argues that Gagliardi sought to "secure Plaintiff's labor under a cap-exempt visa while harboring the contemporaneous intent to illegally subordinate him as the exact postdoctoral researcher the Provost had forbidden." (Pl. Resp. at 5). This conspiracy is not alleged anywhere in the Amended Complaint, and it is plainly contradicted by the offer letter stating that Plaintiff was offered a staff position with staff privileges. *See* Doc. #11, ¶2; 8/31/23 Letter Offering Plaintiff position of Quantum-AI Researcher in the Chemistry Department. Doc. #11, Ex. 1, Page ID #104 ("Additionally, as a valued University staff employee….").

Plaintiff argues that the "intent to defraud materialized immediately," (Pl. Resp at 5) but points to *no false statements* that induced him to take the job with Defendant. Instead, he refers, again, to his classification as a "postdoctoral researcher" on the Gagliardi Group website (Doc. #21 at 5) which was posted either *after* he was hired or *after* his employment ended. *See* Doc. #11, Ex. 5, Page ID # 115 (Emails from January of 2025). He also argues that defendant "fostered an environment where her research group classified and enforced protocols against him as a postdoc" (Pl. Resp , p. 5) which refers to an email exchange from December 23, 2024, between Plaintiff and a staff researcher about email access to the group's online email platform, again *after* Plaintiff was hired. (Doc. #11, Ex. 6, Page ID #119).

In his response, Plaintiff fails to point to any material misstatement of fact about his job as a staff researcher that lured him into taking the job with Defendant that was different than advertised. In fact, Plaintiff alleges in his Amended Complaint and in his response that Defendant recruited and funded Plaintiff to research the application of large language models to active space selection as part of the Azure Accelerate Foundation Models Research proposal. (Doc. #11, at 2; Doc. #21 at 7). Nowhere does Plaintiff allege or argue that this was a "bait and switch" – the Azure project was the project he was recruited to work on and this is the project he was assigned to work on in the Gagliardi Group. Plaintiff himself attaches the research proposal from the Azure project proposal as an Exhibit to his Amended Complaint as proof. (Doc. #11, Ex. 4, Page ID# 110-113). There was no fraudulent inducement.

As argued in Defendant's Motion to Dismiss, the after-the-fact misnomer on a website that had no perfect label for him does not amount to a claim of fraudulent inducement, because it happened after he started working there. Plaintiff's claim for fraudulent inducement must be dismissed.

## Defamation *Per Se*

Plaintiff offers two arguments in opposition to Defendant's motion to dismiss the defamation claim: (1) the qualified privilege protecting Dr. Gagliardi's January 3, 2025, email to Human Resources is defeated by actual malice, and (2) Dr. Gagliardi's alleged statements to Professor Head-Gordon are objectively verifiable rather than opinion. (Pl. Response, Doc. #21 at 6-7). Neither argument is supported by the allegations in the Amended Complaint, and both are contradicted by Plaintiff's own exhibits attached to his Amended Complaint.

With respect to the internal email to human resources, Plaintiff attempts to overcome the qualified privilege that applies to intraoffice communications regarding personnel and

employment matters by arguing that Defendant here acted with actual malice, citing *Kuwik v. Starmark Star Marketing and Admin., Inc.*, 156 Ill. 2d 16, 30 (1995). (Pl. Resp. Doc. #21, p. 6). However, *Kuwik* explains that overcome a qualified privilege, a plaintiff must show a "direct intention to injure" or a "reckless disregard" for the defamed party's rights. *Id.* Here, Plaintiff relies only on the technical falsity of Defendant's statement and points to no allegations that Defendant acted with malice or "reckless disregard for the truth" or and "intent to injure" Plaintiff when she wrote that Plaintiff's title was made up by him. His allegations are simply inadequate to overcome the qualified privilege that attaches to that single communication.

Plaintiff argues that Dr. Gagliardi acted with "documented knowledge" of falsity because the Provost had previously prevented her from hiring Plaintiff as a postdoctoral researcher and because the offer letter identified him as a "Quantum-AI Researcher." (Pl. Resp. at 6-7). But the documents attached to Plaintiff's Amended Complaint give context to Dr. Gagliardi's alleged defamatory statement: Dr. Gagliardi's January 3, 2025, statement expressly states that Plaintiff was hired as a staff scientist. It states, "You were hired as a *staff scientist* because you were too senior to be hired as a postdoc." (Doc. #11, Ex. 3, PageID #109) (emphasis added). So Dr. Gagliardi does not disagree with Plaintiff that he was not a post-doctoral researcher. The second statement that the "title 'Quantum-AI Researcher' is totally made up by you" – even if assumed to be a false statement for purposes of this motion – does not reach the level of inference required to show a "direct intention to injure" or "reckless disregard" to overcome the qualified privilege. *Kuwik* at 30. To the contrary, his own exhibits show that the title issue was resolved within approximately one week through the University's update of the website to "Staff Scientist with Title Quantum AI Researcher". (Doc. #11, Ex. 5, PageID #116). This quick and harmonious

outcome forecloses any plausible interference of malice or bad faith and Plaintiff's allegations, based on the email to HR, are insufficient to overcome qualified privilege and must be dismissed.

As to the alleged statements to Professor Head-Gordon, as explained in Defendant's Motion to Dismiss, a statement is non-actionable opinion when it lacks a precise and readily understood meaning, is not capable of being objectively verified, and is not made in a specific factual context. Subjective characterizations of an employee's job performance – such as competence, work ethic and focus— are non-actionable. *Hopewell v. Vitullo*, 299 Ill. App. 3d 513, 519-520 (1st Dist. 1998) (statement that plaintiff "was fired because of incompetence" held to be non-actionable opinion).

Plaintiff argues that calling him "distracted by LLMs" was objectively verifiable because the Azure Accelerate proposal funded his LLM research, and cites *Doherty v. Kahn,* 289 Ill. App. 3d 544 (1st. Dist. 1997), as authority for his position. (Pl. Resp. Doc. #21 at 7). However, this argument confuses the subject matter of Plaintiff's employment with the manner of his engagement. According to *Doherty*, whether an employee's attention, focus, and professional commitment met Defendant's expectations is a subjective non-actional opinion under Illinois law. *Doherty,* 289 Ill. App. 3d at 557. The remaining alleged statements (that Plaintiff was "not as good a team player as she had hoped" and that Dr. Gagliardi expressed "strong dissatisfaction" with his performance) are subjective opinions, indistinguishable from the "incompetent," "lazy," and "cannot manage a business" statements deemed non-actionable in *Doherty*, and from the "fired for incompetence" statement protected in *Hopewell*. *Hopewell v. Vitullo*, 299 Ill. App. 3d 513, 521 (1st Dist. 1998).

As demonstrated in Defendant's Motion to Dismiss, the email to Human Resources is protected by qualified privilege which Plaintiff has failed to plead sufficient facts overcome, and

the statements to Professor Head-Gordon are non-actionable opinion. Plaintiff's claim for defamation *per se* thus should be dismissed.

**Tortious Interference with Prospective Economic Advantage**

Plaintiff's response does not point to allegations that cure the deficiencies identified in his claim for tortious interference with prospective economic advantage. In his response, Plaintiff identifies two purported expectancies; (1) faculty positions at the University of New Mexico and (2) a funding pathway at the University of Oxford and further argues that the cause-based nature of his PsiQuantum termination is a disputed factual question inappropriate for resolution at the pleading stage. (Doc. #21 at 7-8). Neither argument is sufficient to state a claim.

As explained in the Motion to Dismiss, to state a claim for tortious interference with prospective economic advantage under Illinois law, a plaintiff must allege (1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of the expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening; and (4) damages resulting from the interference. *Anderson v. Van Dorpel,* 172 Ill. 2d 399, 406-407 (1996). The mere hope of receiving a job offer is not a sufficient expectation. *Id.* at 408. Further, where a plaintiff's exhibit attached to the complaint contradicts an allegation, the exhibit controls. Fed. R. Civ. P. 10(c); *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005).

The expectancy at the University of New Mexico consists of nothing more than a single email in which Plaintiff asked Dr. Gagliardi to serve as a reference, and Dr. Gagliardi politely declined, which was her prerogative. (Doc. #11, Ex. 8, PageID #138). The refusal to write a reference letter is not "intentional interference" with a business expectancy, it is an exercise of professional discretion. Plaintiff identifies no offer extended, no offer withdrawn, and no causal

nexus between Dr. Gagliardi's declination and any specific lost opportunity at the University of New Mexico. The Oxford "EPSRC funding pathway" similarly appears nowhere in the Amended Complaint with specificity; no application is identified, no offer is alleged, and no interference is pled. (Doc. #21 at 7). This is exactly the vague "hope of receiving a job offer is not a sufficient expectancy." *Anderson,* 172 Ill. 2d at 408.

Plaintiff cannot misuse his own exhibits by characterizing the PsiQuantum termination as a disputed factual narrative. (Doc. #21 at 2). Plaintiff's Exhibit D, the Dr. Head-Gordon letter that Plaintiff attached to his original complaint, expressly characterizes the termination as "cause-based termination after only 5 weeks or so." (Doc. #1.1, Ex. D, PageID #39). Under Rule 10(c) and *Centers,* 398 F.3d at 933, exhibits control over inconsistent allegations. Plaintiff's reference to a confidential "resolved" employment dispute (Doc. #21 at 2) does not negate the cause-based characterization that he himself placed before the Court. This cause-based termination, occurring before any communications between Dr. Gagliardi and Professor Head-Gordon, also breaks any chain of causation between Dr. Gagliardi's alleged conduct and Plaintiff's continued inability to obtain academic positions.

Plaintiff had not sufficiently pled the elements of tortious interference with prospective economic advantage and therefore his claim should be dismissed.

**Intentional Infliction of Emotional Distress**

Plaintiff's response cannot elevate the conduct alleged in the Amended Complaint to the "extreme and outrageous" threshold that Illinois law requires for intentional infliction of emotional distress.

Under Illinois law, a claim for intentional infliction of emotional distress requires a plaintiff to allege "(1) the defendant engaged in "extreme and outrageous" conduct toward the plaintiff; (2)

the defendant intended or recklessly disregarded the probability that the conduct would cause the plaintiff to suffer emotional distress; (3) the plaintiff endured "severe [and] extreme" emotional distress; and (4) the defendant's conduct actually and proximately caused the plaintiff's distress." *Duffy v. Orlan Brook Condominium Owners' Ass'n*, 2012 IL App (1st) 113577, ¶36 (citing *Ulm v. Memorial Medical Center*, 2012 IL App (4th) 110421, ¶ 39 (internal quotation marks omitted)).

Plaintiff argues that Dr. Gagliardi abused her position of power by leveraging an alleged postdoc classification to prematurely sever Plaintiff's access to data on December 16, 2024, which Plaintiff claims he was promised access to until December 24, 2024. (Doc. #21 at 8). None of this is alleged in Plaintiff's Amended Complaint. Regardless, the December 23, 2024, text messages on which Plaintiff relies were not authored by Dr. Gagliardi at all; they were sent by Bhavnesh Jangid, a graduate student in Dr. Gagliardi's research group. (Doc. #11, Ex. 6, PageID #119). There is no allegation that Dr. Gagliardi, as opposed to the IT department at the University of Chicago, had control over computer access. What's more, a graduate student's text messages cannot constitute extreme and outrageous conduct by Dr. Gagliardi. The court in *Rudis v. National College of Educ.*, 191 Ill. App. 3d 1009, 1011 (1989), addressed the attribution of third-party conduct to the defendant, where the plaintiff alleged that faculty members called her a "cheat and a computer hacker" and attributed recurring rumors to the defendant administrators. The *Rudis* court rejected this theory, affirming dismissal of the IIED claim because the plaintiff failed to sufficiently allege that the defendants' own conduct—as opposed to third parties' conduct—was extreme and outrageous. *Id.* at 1013-14. Here, Plaintiff similarly relies on communications from a third party (graduate student Jangid) to establish Dr. Gagliardi's liability. Under *Rudis*, text messages authored by a graduate student cannot satisfy the extreme-and-outrageous element of an IIED claim against Dr. Gagliardi absent specific allegations of conduct by Dr. Gagliardi herself.

Finally, the alleged conduct – job title that was corrected within a week and professional opinions shared with a colleague in the same field – simply do not reach the level of extreme and outrageous that Illinois courts require to state a claim for intentional infliction of emotional distress.

Plaintiff's claim for intentional infliction of emotional distress must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Dr. Laura Gagliardi respectfully requests that this Court dismiss all four counts of Plaintiff's First Amended Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), and for such other relief that this Honorable Court deems just and equitable.

Respectfully submitted,

JOHNSON & BELL, LTD.

/s/Caroline K. Vickrey
One of the Attorneys for Defendant,
Dr. Laura Gagliardi

Caroline K. Vickrey – ARDC #6210332
Georgia A. Arvanitis – ARDC #6352525
JOHNSON & BELL, LTD.
33 West Monroe Street, Suite 2700
Chicago, Illinois 60603
(312) 372-0770
(312) 372-9818 Fax
vickreyc@jbltd.com
arvanitisg@jbtd.com